UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
FACTORY MUTUAL INSURANCE )
COMPANY, )
 )
        Plaintiff, )
 )
    v. )
 )    No. 17-cv-12265-DJC
 )
EVOQUA WATER TECHNOLOGIES, LLC, )
 )
        Defendant. )
 )

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                   October 26, 2018

**I.    Introduction**

Plaintiff Factory Mutual Insurance Company ("FM") brings claims against Evoqua Water Technologies ("Evoqua"). D. 1. Evoqua moves to dismiss the claims that sound in negligence. D. 13. For the following reasons, the Court DENIES the motion to dismiss, D. 13.

**II.    Standard of Review**

"To survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Boroian v. Mueller, 616 F.3d 60, 64 (1st Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010) (quoting Iqbal, 556 U.S. at 678).

1

## III. Factual Background

The following factual summary is based upon the allegations in the complaint, D. 1, which are accepted as true for the consideration of the motion to dismiss. On or around July 1, 2015, FM issued an insurance policy to the Massachusetts Institute of Technology ("M.I.T.") with respect to certain types of property damage. D. 1 ¶ 7.

M.I.T. is a university that operates a natural gas turbine, which generates electricity for use on its campus. D. 1 ¶¶ 15-17. The turbine's combustion process requires the use of purified and deionized water, which is sprayed into the turbine. D. 1 ¶ 18. M.I.T. and Siemens Water Technology ("Siemens"), the predecessor under the contract to Evoqua, entered into a contract for the delivery of water purification systems to Building 39, which is the primary source of purified water for the natural gas turbine. D. 1 ¶¶ 22, 20, 23. M.I.T. and Evoqua entered into a contract for the service of the "deionized water system" to Building 42, which is the backup source of purified water for the turbine. D. 1 ¶¶ 32, 20. The contract for Building 39 requires that Evoqua perform weekly, quarterly and annual visits, and maintain logs of these visits. D. 1 ¶¶ 26, 27, 29. The contract required Evoqua to purify the water for injection to at least 5 megaohms (a measure of electrical resistance). D. 1 ¶ 31. The contract for Building 42 required that Evoqua perform weekly maintenance as well. D. 1 ¶ 32.

On November 17, 2015, between 9:00 a.m. and 10:00 a.m., alarm notifications on the M.I.T. turbine showed "demineralizer system trouble" and "demineralizer system feed pressure low." D. 1 ¶ 35. Later that day, Evoqua performed weekly preventative maintenance in both Building 39 and Building 42 and did not make any note of the alarms in its internal report. D. 1 ¶ 36. On November 18, 2015, at approximately 6:30 a.m., the natural gas pressure fell and the turbine automatically switched from using natural gas to using fuel oil. D. 1 ¶ 38. When gas

pressure returned to normal and the turbine switched from fuel oil back to natural gas, the turbine unexpectedly shut down. D. 1 ¶ 39. On November 19, 2015, the turbine system showed other alarms, including "demineralizer system product water resolution low." D. 1 ¶ 40. That same day, Evoqua again performed preventative maintenance, but it only noted a problem with a leak on a pump and did not note any problems with water purity. D. 1 ¶ 41. After M.I.T. failed to restart the turbine, it contacted Siemens for assistance. D. 1 ¶ 42. A Siemens engineer determined that certain injectors in the turbine were plugged and that restarting and running the turbine would clear the plug. D. 1 ¶¶ 43-44. Siemens successfully shut down and restarted the turbine on November 25, 2015. D. 1 ¶ 44.

On November 27, 2014, Evoqua recorded, but did not log, a water purification reading of .0855 megaohms. D. 1 ¶ 45. Prior water purification readings had averaged around 17.6 megaohms and the service contract called for a standard of at least 5 megaohms. D. 1 ¶ 46. Evoqua did not log any water purification readings at all between November 18, 2015 and November 29, 2015. D. 1 ¶ 47. During that period, Evoqua also performed maintenance on "mixed demineralized resin beads," which are a component in the purification process. D. 1 ¶ 50.

The turbine again shut down unexpectedly on November 27, 2015. D. 1 ¶ 48. On December 1, 2015, Siemens performed an inspection that revealed that a nozzle had failed, that pieces of metal were in the combustion chamber and that mixed resin beads were in the turbine's water filters and the water itself. D. 1 ¶¶ 49-51. The nozzle allegedly failed because the water used in the turbine was contaminated and left calcium deposits in the turbine, which clogged the nozzle, causing it to overheat and melt. D. 1 ¶¶ 53-54. There was significant damage to other components of the turbine as well. D. 1 ¶ 55. The turbine did not return to service until February 27, 2016. D. 1 ¶ 57. During the approximately ninety-day period that the turbine was offline,

M.I.T. incurred costs to purchase electricity that would have been generated by the turbine. D. 1 ¶¶ 58, 60. As a result of the losses incurred by M.I.T., FM paid M.I.T. pursuant to the insurance policy and received an assignment of all of M.I.T.'s rights to recover against Evoqua from the incident. D. 1 ¶¶ 9-12.

## IV. Procedural History

On November 15, 2017, FM filed its complaint. D. 1. FM brings seven claims against Evoqua: breach of contract related to the Building 39 contract (Count I), breach of express warranty related to the Building 39 contract (Count II), breach of contract related to the Building 42 contract (Count III), breach of express warranty related to the Building 42 contract (Count IV), breach of implied warranty of merchantability related to the Building 42 contract (Count V), negligence (Count VI), and negligent misrepresentation (Count VII). D. 1 ¶¶ 61-101. Evoqua has moved to dismiss Counts VI and VII, the negligence claims. D. 13. The Court has heard argument on the motion and took the matter under advisement. D. 22.

## V. Discussion

Evoqua moves to dismiss Count VI (negligence) and Count VII (negligent misrepresentation) because it contends that its obligation to M.I.T. and FM were governed exclusively by the contracts and that it owed no duties outside of those contracts. D. 14 at 4.

Under Massachusetts law, "failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made." Anderson v. Fox Hill Vill. Homeowners Corp., 424 Mass. 365, 368 (1997). Similarly, "failure to perform a contractual duty does not give rise to a tort claim for negligent misrepresentation." Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 474 (2009). However, "negligence in the manner of performing that duty as distinguished from mere failure to perform it, causing damage, is a tort." Herbert A. Sullivan, Inc.

v. Utica Mut. Ins. Co., 439 Mass. 387, 396 (2003) (quoting Abrams v. Factory Mut. Liab. Ins. Co., 298 Mass. 141, 144 (1937)); see Arthur D. Little Int'l, Inc. v. Dooyang Corp., 928 F. Supp. 1189, 1203 (D. Mass. 1996) (observing that "Massachusetts courts have upheld tort claims to recover economic losses from negligent breach of contractual duties").

FM alleges both that Evoqua failed to perform its contractual duties regarding the turbine's water supply and, in the alternative, that Evoqua negligently performed its contractual duties regarding the supply of water. D. 15 at 3-4. For example, FM alleges that Evoqua provided maintenance on the demineralized resin beads, as required by the contract, but that its negligent performance of that maintenance resulted in damage to the turbine. D. 1 ¶¶ 50-51. Similarly, FM alleges that Evoqua performed weekly maintenance inspections, as required by the contract, but that its negligent performance of these inspections and negligent misrepresentations regarding the results of the inspections resulted in damage to the turbine. D. 1 ¶¶ 41, 45, 47, 88-101. The allegations in the complaint are legally sufficient to state a claim for relief under the negligence theories.

While it may be inconsistent to plead that Evoqua both breached its contractually obligation and performed its contractual obligation negligently, FM is entitled, at least, to proceed on alternative theories at this stage of the litigation. Q Div. Records, LLC v. Q Records, QVC, Inc., No. Civ. A. 99-10828-GAO, 2000 WL 294875, at *7 (D. Mass. Feb. 11, 2000). To the extent that Evoqua contends that dismissing the negligence counts is necessary to prevent double recovery on its claims, it is not clear at this stage whether both the negligence counts and the breach of contract counts will go before the jury. Moreover, FM does not seek duplicative damages its claims negligence and breach of contract claims. D. 15 at 6 n.3.

## VI. Conclusion

For the foregoing reasons, the Court DENIES the motion to dismiss, D. 13.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge